UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
02-CV-1343(JMR/FLN)

| | |
|---|---|
| Linda Thompson et al. ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| Hirano Tecseed Co., Ltd. ) | |
| ) | |
| v. ) | |
| ) | |
| Sheldahl, Inc. ) | |

Defendant, Hirano Tecseed Co., Ltd., seeks summary judgment. For the following reasons, the motion is granted.

I. Background

The Court considers all disputed facts in the light most favorable to plaintiff, Linda Thompson. On June 11, 2001, Ms. Thompson, an employee of third-party defendant, Sheldahl, Inc. ("Sheldahl"), was injured on the job while operating a machine manufactured by defendant, Hirano Tecseed Co., Ltd. ("Hirano").

The machine was used to laminate parts for flexible electronic circuit boards produced by Sheldahl. In the early 1990s, Sheldahl set out the machine's specifications, and Hirano produced design drawings and manufactured the machine in compliance with Sheldahl's design.

In order to laminate the circuit boards, the machine's design required moving rollers which meet at "nip points."[1] Hirano's design included a safety glass enclosure around the moving rollers, with a posted warning stating, "Danger, watch your hands and fingers."

Hirano's design also included a manual emergency shut-off switch located inside the enclosure, along with rigid metal safety bars to prevent objects from coming into contact with the nip points. (Neeley Dep. 66-71, Omori Dep. 23-27.) Hirano offered to build the enclosure with safety interlocks which would automatically shut the machine down if the enclosure doors were opened. Sheldahl, however, rejected this safety feature.

Hirano's personnel installed and tested the laminator at Sheldahl's facility in 1994. The installation took several months. During this period, Hirano and Sheldahl employees discovered that Sheldahl's adhesive, used in the manufacturing process, frequently dripped onto the material as it passed over the rollers, rendering the machine's circuit boards unusable. Hirano and Sheldahl employees found the only feasible way to resolve this problem was for an operator to clean the rollers.

Hirano also wrote the machine's instruction manual. The manual's opening chapter – "General Safety Instructions" – warned,

---

[1] "A 'nip point' is the location where rollers come into contact with each other." Ramirez v. Komori Am. Corp., 1999 WL 187072, *2, n. 4 (S.D.N.Y. 1999) (unpublished).

2

among other more general safety issues, that:

> Generally, all work to be done on this machine must be carried out on machine standstill. (dead stop)
>
> . . .
>
> [The machine's] rollers may only be turn[ed] in cases which are absolutely unavoidable. If yes, turn rollers only in creep speed and if possible, in opposite direction. Hand rejectors must also only [be] removed in cases which are absolutely unavoidable.
>
> When cleaning metering rollers or coating rollers of the coating unit it is urgently recommended to turn only one roller at [a] time with "cleaning speed." Safety cover and hand rejectors should always be assembled to the machine.

(Ballentine Aff. Ex. N, at 000106-107.)

A later subsection of the manual entitled "Production Run" and "Safety Precautions" contained the following warning:

> Do not touch the web or roller during operation in any location or under any circumstances.

(Kerwin Aff. Ex. M, at Hirano 0053.)

The Hirano engineer who trained Sheldahl employees in the machine's use instructed them against cleaning the machine while it was running. Notwithstanding this advice, several Sheldahl employees (other than plaintiff) saw the engineer wipe drips from a coating roller while the laminator was running.

Sheldahl managers preferred that its employees leave the laminator running during cleaning. This avoided wasting valuable material, because dripping occurred again when the machine was restarted. Sheldahl managers chose not to distribute Hirano's manual to the laminator operators. They did not give Hirano's

3

warnings during training and omitted them from a manual summary provided to the employees. Employees were, in fact, trained to clean the rollers while the machine was running.

Sheldahl retained a third party to build access panels into the safety glass enclosure near the rollers, and stairs leading to the panels to facilitate the employees' access to the roller area. The access panels and stairs were installed while the laminator was being tested. Hirano did not participate in the design or installation of the access panels, but the Court accepts plaintiff's assertion that Hirano personnel could observe the modifications prior to their return to Japan.

Plaintiff operated the laminator for more than six years prior to this accident. She regularly cleaned the laminator rollers while the machine was running. She never saw Hirano's manual during that time. On June 11, 2001, plaintiff attempted to wipe adhesive drips from the material passing over the rollers. The material caught her glove, and her arm was pulled into and crushed by the nip rollers.

Plaintiff seeks damages for personal injuries sustained in this accident. This Court has subject matter jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332.

II. <u>Analysis</u>

   A. <u>Summary Judgment</u>

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 246 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. <u>See</u> <u>Anderson</u>, 477 U.S. at 248-49; <u>see also</u> <u>Hartnagel v. Norman</u>, 953 F.2d 394, 395-96 (8th Cir. 1992). "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson</u>, 477 U.S. at 247-48. If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. <u>See</u> <u>Celotex</u>, 477 U.S. at 322.

   B. <u>Design Defect</u>

Plaintiff claims Hirano's laminator was defective and not fit

5

for its intended use.[2]  To survive summary judgment on this claim, plaintiff must produce evidence from which a jury could find (1) the laminator was unreasonably dangerous for its intended use due to the defect; (2) the defect existed when the laminator left defendant's control; and (3) the defect was the proximate cause of the injury.  Bilotta v. Kelley Co., 346 N.W.2d 616, 623 n. 3 (Minn. 1984), citing Lee v. Crookston Coca-Cola Bottling Co., 188 N.W.2d 426, 432 (Minn. 1971).

Hirano argues that, because it did not design the laminator, it cannot be held liable for a design defect.  Minnesota has not directly addressed whether a manufacturer which did not design a product may nonetheless be liable for a design defect.  The general rule in most jurisdictions is that when a product is manufactured to a customer's specification, that is a complete defense to a design defect claim against the manufacturer, unless the specifications are obviously dangerous and should not be followed. See, e.g., Spangler v. Kranco, 481 F.2d 373, 375 (4th Cir. 1973) (applying Virginia law); Garrison v. Rohm & Haas Co., 492 F.2d 346, 351 (6th Cir. 1974) (applying Kentucky law); Moon v. Winger Boss Co., 287 N.W.2d 430, 299-300 (Neb. 1980) (applying Nebraska law); Austin v. Clark Equip. Co., 48 F.3d 833, 837 (4th Cir. 1995)

---

[2] Plaintiff points to two alleged defects:  the lack of interlock switches on the enclosure, and the constant dripping, which plaintiff claims required operators to clean the machine while it was running.  Both are design defects; no manufacturing defect is alleged.

6

(applying Virginia law); Houlihan v. Morrison Knudsen Corp., 768 N.Y.S.2d 495, 496 (N.Y. App. Div. 2d Dep't 2003) (applying New York law); Bloemer v. Art Welding Co., Inc., 884 S.W.2d 55, 59 (Mo. Ct. App. 1994) (applying Missouri law); Huff v. Ford Motor Co., 338 N.W.2d 387, 390 (Mich. Ct. App. 1983) (applying Michigan law). See also McCabe Powers Body Co. v. Sharp, 594 S.W.2d 592, 595 (Ky. 1980) ("where a product is manufactured according to plans and specifications furnished by the buyer and the alleged defect is open and obvious, the manufacturer is protected from liability for injuries occasioned by the use of the product").

The Restatement (Second) of Torts states that a contractor who makes a chattel according to an employer's specifications "is not required to sit in judgment" on those specifications. Restatement (Second), Torts § 404, comment a (1965). "The contractor is not subject to liability if the specified design or material turns out to be insufficient to make the chattel safe for use, unless it is so obviously bad that a competent contractor would realize that there was a grave chance that his product would be dangerously unsafe." Id.; see also Ackerman v. York Corp., 260 F.2d 1, 6, 8 (8th Cir. 1958) (upholding jury instruction on Minnesota law that employed identical language from First Restatement § 404, comment a); Moon, 287 N.W.2d at 433; Cook v. Ingalls Shipbuilding, Inc., 1993 WL 13015233, *2 (S.D. Ala. 1993) (unpublished); Brawner v. Blue Chip Enters. Maint., Inc., 1990 WL 138998, *3 (Tenn. Ct. App.

1990) (unpublished); Luna v. Shockey Sheet Metal & Welding Co., 743 P.2d 61, 62 (Idaho 1987).

The Court finds that Minnesota's law on this issue is most closely aligned with those jurisdictions which relieve a non-designing manufacturer from liability for design defects. Minnesota employs a reasonable care standard in design defect cases, which assumes that a manufacturer will have a role in designing the product. Compare Bilotta, 346 N.W.2d at 621, 624, with Garrison, 492 F.2d at 351.

After reviewing the authorities cited above, this Court concludes that the Minnesota Supreme Court would follow their reasoning to find that a non-designer cannot be liable for a design defect.

Plaintiff argues that Hirano ought to be considered the designer. (Pl. Mem. at 31-32.) This argument bears no weight. All of the evidence shows that Sheldahl established the laminator's specifications, thereby making it the designer. Compare Garrison, 492 F.2d at 347, 351 (holding manufacturer which did not develop specifications not liable for design defect). Hirano built the machine as directed, and having played no part in developing the specifications, is not a designer. Absent a showing that the specifications were so obviously dangerous that it would be unreasonable to build them, Hirano cannot be held liable for a design defect in the laminator.

C.  <u>Failure to Warn</u>

Plaintiff claims Hirano breached its duty to warn Sheldahl and Sheldahl employees about the dangers associated with the machine. Manufacturers must warn consumers of reasonably foreseeable dangers. <u>Gamradt v. Federal Lab., Inc.</u>, 380 F.3d 416, 419 (8th Cir. 2004) (applying Minnesota law). They are under no duty to warn, however, if the danger is open and obvious. <u>Id.</u> Whether a danger is open an obvious is a question of law. <u>Id.</u>, citing <u>Germann v. F.L. Smithe Mach. Co.</u>, 395 N.W.2d 922, 924 (Minn. 1986).

The Court finds the risks inherent in a roller pinch point is open and obvious.[3] An industrial laminator is a large machine, with very visible closely-fitted rotating rollers. Such a device presents a clear risk that a person's hand could be pulled into the moving rollers. This is precisely the risk to which plaintiff was exposed. Her injury is an unfortunate, but utterly predictable, consequence of the open and obvious risk. <u>See, e.g.</u>, <u>Ramirez</u>, 1999 WL 187072, at *8 (granting summary judgment on failure-to-warn claim where "it would be obvious even to a person unfamiliar [with the machine] that the danger posed by touching two rotating rollers would be that a hand could be drawn in and crushed"). This danger

---

[3] Plaintiff correctly notes that the obviousness of a danger is no defense to a design-defect claim. <u>Holm v. Sponco Mfg., Inc.</u>, 324 N.W.2d 207, 212 (Minn. 1982). Obviousness does, however, mitigate against a failure-to-warn claim. <u>Mix v. MTD Prods., Inc.</u>, 393 N.W.2d 18, 20 (Minn. Ct. 1986) (holding <u>Holm</u> inapplicable to failure to warn claim).

is readily apparent to the user.  Contrast Parks v. Allis-Chalmers Corp., 289 N.W.2d 456, 460 (Minn. 1980) (no open and obvious risk where plaintiff did not know that rollers could move at variable speeds).

Plaintiff's action in wiping another roller or material near the nip rollers at the time of the accident does not render the danger of nip rollers any less obvious.  As plaintiff herself acknowledged, at a "pinch point . . . you got to watch out so you don't get caught."  (Thompson Dep. at 60.)  Accordingly, the Court finds, as a matter of law, that Hirano had no duty to warn against the manifest hazards posed by moving rollers and nip points.

Even assuming it did, the undisputed evidence shows the duty to warn was fulfilled.  A warning must (1) attract the attention of the individuals that the product could harm; (2) explain the potential causes of injury; and (3) provide instructions that explain ways to safely use the product to avoid injury.  Gray v. Badger Mining Corp., 676 N.W.2d 268, 274 (Minn. 2004).

Here, the evidence shows Hirano placed the warning, "Danger, watch your hands and fingers," on the enclosure through which employees had to pass -- every time -- to reach the rollers.  It provided Sheldahl with an instruction manual highlighting the dangers of touching the rollers during operation.  Even if a Hirano engineer cleaned adhesive off the rollers while the machine was running, and Sheldahl employees witnessed this conduct, that act is

10

not a de facto lesson to Sheldahl employees to do the same. The warnings were given.

Plaintiff argues that Hirano's instruction manual warnings and training procedures sent "mixed messages." (Pl. Mem. at 24.) This argument is inconsequential. Plaintiff neither read the manual nor received any training from Hirano or its employees. Hirano gave its warnings to Sheldahl managers, who chose to omit them when instructing employees on the use of the machine. Moreover, even when viewed most favorably to plaintiff, Hirano's warnings do not suggest it is safe to do what plaintiff did: touch a moving roller while the machine was running at operating speed.

Accordingly, plaintiff's duty to warn claim fails as a matter of law.

III. Conclusion

For the foregoing reasons, Hirano's motion for summary judgment is granted, and plaintiff's claims are dismissed with prejudice.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May 23, 2005

                                                s/ James M. Rosenbaum
                                                JAMES M. ROSENBAUM
                                                United States Chief District Judge